HANNAH, The (CLINTON v.). See Case No. 2.898.

HANNAH, The (FORBES v.). See Case No. 4.925.

HANNAH, The (HUNTER v.). See Case No. 6.905.

HANNAH M. BUELL, The (HENDERSON v.). See Case No. 6,352.

## Case No. 6,029a.

### The HANNAH M. JOHNSON.

[Blatchf. Pr. Cas. 35.] [1]

District Court, S. D. New York. Aug., 1861.

PRIZE — PLEADING — REASONABLE CAUSE FOR SEIZURE.

1. Mode of pleading in an answer and claim commented on.

2. The prize law regards property which was enemy property when shipped as continuing to be such, although consigned by a bill of lading to other parties, unless clear evidence is given of a change of title.

3. Vessel released as not being enemy property, and restored on payment of costs, there having been reasonable cause for her seizure.

4. Cargo condemned, as enemy property, unless further proof be furnished within ten days as to ownership of cargo.

In admiralty.

BETTS, District Judge. The schooner Hannah M. Johnson was captured on the 31st of May, 1861, twelve miles to the southwest of Cape Lookout, on the high seas, by the United States brig-of-war Perry, under command of Lieutenant E. G. Parrott, and was libelled, together with the cargo on board, for condemnation and forfeiture, as lawful prize. She is charged with giving aid and comfort to the enemies of the United States, and, during her previous voyage and prior thereto, with having carried the flag of the treasonable league called "The Confederate States of America," enemies at war with the United States. An allegation against her, of having violated the blockade of New

Orleans, was abandoned by the district attorney, on the trial of the cause. Three answers and claims, nominally, were filed in the cause; one by "Charles H. Wells, on behalf of himself and others," (after this word an illegible scrawl was inserted, supposed to be meant for the word "owners,") "of the schooner H. M. Johnson, the respondent also claiming the" (word very faintly written, supposed to be) "cargo, as carrier thereof." The claimants deny most of the charges in the libel. They do not state the ownership of the vessel, or the place or business of her employment when arrested. An answer was also put in by Charles C. Faber and Henry M. Faber, of the firm of C. C. & H. M. Faber, for their interest in sixty bales of cotton on board the schooner, consigned to them at New York, from New Orleans, alleging that she was an American vessel, and that her sailing from New Orleans without a clearance did not affect the rights of the claimants to the cotton. The claimants do not aver any property or interest to be vested in them in the sixty bales of cotton on board the schooner. An answer was also interposed by Hampton S. Smith and William Patrick, of the city of New York, for their interest in sixty-five bales of cotton on board the vessel. They aver they were in advance to the shippers for the value of the cotton. They do not state who were the shippers, nor what the advance was, or when or how made. All these claimants make general denials to the charges in the libel, and take substantially the grounds of exception and defence to the suit which were made in the preceding cases. The mode of pleading the defences in this case is exceedingly indefinite, and discloses essentially nothing of the particulars which the claimants propose to give in evidence in avoidance of the capture. It does not appear upon the claims who is owner of the vessel, or what was the place of her outfit, or what has been the course of her trade or employment. No test affidavits are appended to the pleadings. These particulars are of material importance, on the general charge of the confiscability of the vessel or cargo, as enemy's property, as also on the charge against her for a violation of blockade, had that charge not been abandoned, because, upon the libellants rests the necessity of substantiating the averments of the libel, so far as to show probable cause for the seizure and prosecution; and they are not without relevancy under the further charge that the vessel had been employed in giving aid and comfort to the enemies of the United States in actual hostilities against the government. The mode of pleading not being specifically objected to by the United States attorney, its irregularity or imperfectness will not demand further notice from the court, as those external facts do not appear to have any important bearing upon the merits of the cause.

It is not easy to ascertain from the proofs

when the vessel sailed south under her license, or when or at what port she arrived, or how she was laden, and for whose benefit. She appears to have been employed in the winter and early in the spring of 1861, in short trips, on freight, in carrying lumber and produce, between ports of the states of Florida, Louisiana and Texas; and to have terminated that course of business in May, 1861, and on the 14th of that month to have sailed from New Orleans under a Confederate States clearance, freighted with a miscellaneous cargo, all of which remained on board of her at the time she was taken as prize by the libellants on the high seas. She was built, owned in numerous shares, and registered in the state of New York, one only of her owners residing out of that state, and in the state of Connecticut. The vessel had no interest in the cargo laden on board further than for freight, and the only direct evidence as to the ownership of the cargo is gathered from the loose supposition of the chief mate that it belonged to the shippers, because he knew of no other owners to it. The bills of lading were in all instances drawn to consignees or order or assigns, in no instance designating whether the goods were despatched to the interest of the consignor or consignee; and no letter of advice or explanatory evidence is produced to determine that matter. The shippers and consignors were all at the place of shipment, and leave it wholly undisclosed on the bills of lading that the shipment is not entirely theirs, and for their exclusive benefit. The claimants now ask the intendment to be made, on the claims of Smith & Patrick, that the cotton shipped to their order became, by the address to them, their individual property. Enemy's property in transitu does not change its character by such mode of transmission. The prize law will regard the property as retaining its liability to arrest and condemnation, the same as in the hands of its owner when shipped. Wheat. Mar. Capt. 85; The Marianna, 6 C. Rob. Adm. 24. The bill of lading, until indorsed and given circulation as a negotiable instrument, does not pass absolutely, property shipped to an assignee or consignee; and especially in prize captures, it is regarded as remaining the property of an enemy, when exported during hostilities which continue to the time of capture. The Abo, Spinks, Prize Cas. 46. Ordinarily, the delivery of goods by a shipper to the master of a vessel is a delivery to him as agent of the consignor, and not of the consignee, and will so operate in law, unless explanatory facts on the face of the bill of lading, or otherwise proved, accompany the delivery and evince the contrary. The Frances, 8 Cranch [12 U. S.] 418. And to that effect is the reasoning of the court upon the English cases (Lawrence v. Minturn, 17 How. [58 U. S.] 100, 107), although in Grove v. Brien, 8 How. [49 U. S.] 439, it was held more broadly that a consignment generally

(not otherwise explained) vests the goods in the consignee. That doctrine, with the qualification made by the court, no way impugns the rule in respect to prize seizures, and, if it can prevail, and be construed to render the shipment of the cotton at New Orleans an assignment there, in payment of the claimants' debt, that result must be obtained by full and clear evidence that the facts were really so, on which the shipment and the delivery of the cotton to the master of the vessel, at the time of its shipment, was made. The Abo, above cited. The other claimants, Faber & Faber, do not assert any interest in the cargo in themselves; but, as the claims are framed in exceedingly loose and indefinite terms, and the arguments on the hearing seem to regard all the claimants as entitled to a common defence, the court is disposed to consider the points applied to one to embrace all the claims pending.

The other allegations in the libel, upon which the libellants urge the condemnation of the vessel and cargo, are that they were used and employed by her in aid of the enemies of the country. The method of such employment is not specified in the libel, nor does it appear that a substantive offence of the denomination is, under the law of nations, imputable to property, either consisting in vessels or goods. It may be made a confiscable offence by municipal law, but it would then fall under the jurisdiction of local and municipal courts, and not be cognizable by prize courts. The court has not been put in possession, since the adjournment of congress, of the acts passed at its last session; and it is unable to declare that no law now exists in this country subjecting vessels and cargoes belonging to the United States or its citizens to condemnation and forfeiture for the commission of the acts denounced in this libel, nor but that such offences may be placed under the jurisdiction of prize courts. No such law existed at the time of the capture made in this case, and there can be no cause for judicial arrest or adjudication against this vessel and cargo under the public law.

The further charge, that the vessel sailed under, raised, or used, the flag of the enemy during any part of the voyage, is not supported by the proofs. No other evidence is adduced to the fact than the answers to the preparatory interrogatories. Those answers disclose that, in some instance, whilst the vessel lay in enemy's ports, she was compelled by the local authorities to have that flag on board, but that it was always repudiated by the officers of the vessel as belonging to her, and was destroyed as soon as they got the vessel to sea out of those ports; and it is not made to appear that the flag was ever used on the vessel after her officers or crew had knowledge or notice that the government of the United States recognized a state of war to be subsisting and waged against them by the insurrectionists or rebels

in New Orleans. The vessel left the port of New Orleans, on her home voyage, on the 14th of May, 1861. The proof does not show that she committed any act previous to that time in aid of the enemy, with notice that war was levied against the United States and recognized by the government. The acceptance of a clearance under the authority of the Confederate States was an act of personal misfeasance against the revenue laws of the United States, and punishable under these laws, as being tantamount to coming into port without a lawful one; but it is judicially known to the court that these acts were for a considerable period, and until open hostilities were set on foot by the insurgent states, tolerated as necessities imposed upon loyal vessels absent from their ports of destination, until the rebellion progressed to acts of open hostility on the part of the rebels and insurgents; and accordingly those particular acts at such period must be regarded by the court, in a prize suit, as committed previous to the recognition by the government of an existing state of civil war between the insurgent portion of the country and the government.

In my opinion, therefore, it is not proved, on the part of the libellants, that the claimants of the vessel had actual or constructive notice, at the time the cargo in question was laden on board of her, that a state of war between the insurgents and the government existed and was recognized by the government of the United States; and that accordingly the vessel, her tackle, &c., is not liable to seizure and condemnation for the acts alleged against her. The cargo was shipped and laden on board the vessel at New Orleans by residents of that place, after the public secession or rebellion of the state of Louisiana, and after the open avowal of war with the United States made by the Confederate States; and all persons domiciled at that place are legally chargeable with the acts of the government under which they claim allegiance. The property so shipped was enemy's property, and liable to confiscation to the United States as such. The judgment of the court accordingly is that the vessel, her tackle, &c., be restored to the claimants, on payment of costs, there being reasonable cause for her seizure, as she sailed from an enemy port, under an enemy clearance, and without exhibiting, when arrested, full muniments of title as a loyal vessel. And it is further ordered, that a decree of condemnation and forfeiture be rendered against the cargo seized with the vessel, as being enemy property at the time it was laden on board, together with costs, leave, however, being given to the respective claimants thereof to produce further proofs that the cargo when shipped, belonged to neutral or loyal owners. Such further proofs are to be furnished at the costs of the claimants, and are to be given within ten days from the entry of this decree, unless further time be

allowed therefor by the court or by stipulation of the libellants.

[NOTE. There was a hearing upon further proofs, and judgment affirmed, in Case No. 6,-030. An application for allowance of freight for the carriage of the confiscated cargo was denied in Case No. 6,031.]